**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| In re: ) | Chapter 15 |
| ) | |
| GOOD NATURED PRODUCTS INC.,[1] ) | Case No. 24-80891 |
| ) | |
| Debtors in a Foreign Proceeding. ) | (Joint Administration Requested) |
| ) | |

**DECLARATION OF MARY BUTTERY, K.C.**
**AS CANADIAN COUNSEL TO THE DEBTORS IN SUPPORT OF**
**THE DEBTORS' CHAPTER 15 PETITIONS AND REQUESTS FOR CERTAIN**
**RELATED RELIEF PURSUANT TO CHAPTER 15 OF THE BANKRUPTCY CODE**

I, Mary Buttery, K.C., to the best of my information and belief, declare as follows:

1. I am a partner at the Canadian law firm, Osler, Hoskin & Harcourt, LLP ("OHH"), 1055 Dunsmuir Stret, Suite 3000, Bentall Four, Vancouver, BC V7X IK8, Canada. OHH is Canadian counsel to good natured Products Inc, and each of the above-captioned debtors (the "Debtors") whose reorganization proceedings under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended ("CCAA") have been commenced (the "Canadian Proceeding") before the Supreme Court of British Columbia (the "Canadian Court"). True and correct copies of the documents evidencing commencement of the Canadian Proceedings are attached as Exhibit A to each Form Petition filed by the Debtors. I am the partner in charge of the Canadian Proceeding at OHH.

---

[1] The Debtors in these chapter 15 proceedings, together with the last four digits of their business identification numbers are: good natured Products Inc. (9782); good natured Real Estate Holdings (Ontario) Inc. (9738); 1306187 B.C. Ltd. (9102); good natured Products (CAD) Inc. (3430); good natured Products Packaging Canada GP Inc. (0013); good natured Products Packaging Brampton GP Inc. (1615); good natured Products Industrial Canada GP Inc. (9542); good natured Products Packaging Canada LP (5943); good natured Products Packaging Brampton LP (5141); good natured Products Industrial Canada LP (5344); good natured Products (Illinois), LLC (1986); good natured Products Real Estate U.S., LLC (5490); good natured Products (US) Inc. (7740); good natured Products Packaging US LLC (5490); good natured Products Direct LLC (0622); good natured Products (Texas) LLC (2342).

77027988;1

2. I submit this declaration in support of the *Verified Petition for Recognition of Foreign proceeding and Certain Related Relief* [Dkt. No. 9] [2] (the "Verified Petition" and, together with the Form Petitions, the "Petitions"), in connection with the relief the Foreign Representative is requesting in these chapter 15 cases, and to assist in understanding the CCAA and Canadian law.

3. If I were called upon to testify, I could and would testify competently to the statements set forth in this declaration. I am authorized to submit this declaration on behalf of the Debtors.

4. In this declaration, after describing my background and qualifications, I provide a description of Canadian law and the practice relevant to this Court's consideration of the Chapter 15 Petition.

5. In preparing this declaration, I have reviewed (i) the Petitions, (ii) the documents submitted in these chapter 15 cases and (iii) the CCAA and other provisions of Canadian law that I consider relevant to the Foreign Representative's requests of this Court.

## Professional Background and Qualifications

6. I attended the University of Windsor where I graduated with a Bachelor of Law in 1991. After articling from 1991 to 1992, I took the bar admission court and was admitted to the Bars in Ontario in 1993, British Columbia in 1997, Saskatchewan in 2021, New Brunswick in 2022, Yukon in 2022, and the Northwest Territories in 2023.

7. I have extensive experience in the field of Canadian corporate reorganization and insolvency law, advising debtor corporations and large corporate groups, lenders, creditors, court-appointed officers (*e.g.*, CCAA monitors), investors, and acquirers in CCAA proceedings,

---

[2] Capitalized terms used but not defined in this declaration have the meanings given in the Verified Petition.

2

77027988;1

receiverships, bankruptcy, as well as under federal and provincial corporate and/or insolvency legislation in both Canada and international contexts.

8. My expertise in Canadian restructuring law has been recognized by a number of different publications, including, The Best Lawyers in Canada in Insolvency and Financial Restructuring Law; the Canadian Legal Lexpert Directory in Insolvency and Financial Restructuring; Chambers Canada, Chambers Global, and Benchmark Canada.

### The Debtor's CCAA Proceedings

9. On June 28, 2024, the Debtors applied to the Canadian Court for relief under the CCAA, and was granted the Initial CCAA Order.

10. As described in the *Declaration of Paul Antoniadis in Support of the Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings or, in the Alternative, Foreign Non-Main Proceedings and (II) Recognition of Foreign Representative* (the "Antoniadis Declaration"), the Debtors commenced these chapter 15 cases to ensure the enforceability and effectiveness of the orders entered by the Canadian Court in the Canadian Proceeding, including but not limited to the Initial CCAA Order. These chapter 15 cases will ensure comity is granted to the orders issued in the Canadian Proceedings in the United States, which will protect the Debtors from dissident creditors seeking to bypass the Canadian Proceeding by commencing or continuing litigation or taking other actions in the United States to obtain a greater recovery than other, similarly situated creditors. Obtaining this Court's recognition and enforcement of the Canadian Proceeding, and ultimately any restructuring plan or sale through the Canadian Proceeding, together with other related relief requested, is essential to fairly and efficiently conduct the Canadian Proceeding.

11. On June 28, 2024, the Canadian Court entered the Initial CCAA Order which, among other things, appointed Alvarez and Marsal Canada as the monitor of the Debtors in the

Canadian Proceeding (the "Monitor"). The Initial CCAA Order also authorizes good natured Products Inc. ("GDNP PubCo") and apply for chapter 15 relief. *See* Initial CCAA Order at ¶¶ 48-49. During the hearing before the Canadian Court on June 28, 2024, I clarified that Debtors intend for good natured Products Inc. to act as Foreign Representative for all of the Debtors, which the Canadian Court approved at the hearing. A certified copy of the Initial CCAA Order is attached as Exhibit A to each Petition.

12. The Initial CCAA Order further authorizes, among other things:

- a stay of proceedings or the exercise of rights or remedies against the Debtors and the Monitor affecting the Debtors' business or property, until July 8, 2024 (which stay may be extended);

- that counterparties who have verbal or written agreements with the Debtors must continue providing services to the Debtors and are forbidden from discontinuing those services until allowed by the Canadian Court;

- the appointment of the Monitor to, among other responsibilities: (a) monitor the Debtors' receipts and disbursements; (b) report to the Canadian Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Debtors' property or business, and such other matters as may be relevant to the Canadian Proceedings; (c) have full and complete access to the Debtors' property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Debtors, to the extent that is necessary to adequately assess the Debtors' business and financial affairs or to perform its duties arising under the Initial CCAA Order; (d) be at liberty to engage independent legal counsel or other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations; and (e) perform such other duties as are required by the Initial CCAA Order or by the Canadian Court from time to time;

- grants the Monitor, counsel to the Monitor, and counsel to the Debtors a charge (the "Administration Charge") on the Debtors' property as security for their respective fees and disbursements;

- grants the Debtors' directors and officers a charge (the "Directors' Charge") on the Debtors' property as security for indemnification against obligations and liabilities the Debtors' directors and officers may incur after the commencement of the Canadian Proceedings, except to the extent that the obligation or liability was incurred as a result of the director's or officer's gross negligence or willful misconduct;

77027988;1

Initial CCAA Order at ¶¶ 16, 19, 22-24 and 31-33.

## Statements of Canadian Law and Practice

13. The CCAA provides for a court-supervised reorganization procedure designed to enable a financially distressed company to avoid enforcement proceedings against its assets while maximizing the company's value as a going concern for the benefit of creditors and other parties in interest.

14. A CCAA proceeding is a voluntary insolvency proceeding in which a debtor reorganizes or liquidates its business and distributes proceeds to creditors under a court supervised plan. A debtor's assets and affairs are subject to the supervision of the court throughout a CCAA proceeding.

15. In a CCAA proceeding, absent exceptional circumstances, a debtor's management and board of directors remain in place and the board maintains its power under Canadian law to approve significant actions, including disposing of important assets, borrowing significant amounts, or changing corporate structures, subject to oversight by a court-appointed monitor (discussed below) and approval of the court.

16. Upon the commencement of a CCAA proceeding, the court will appoint a qualified monitor (*See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.7) who functions as an independent court officer and observer of the CCAA proceeding and the debtor's business and (i) monitors the company's ongoing operations, (ii) reports to the court on any major events affecting the company, (iii) notifies the company's creditors and, if applicable, shareholders of any meetings and tabulates votes at these meetings, if held, (iv) assists with preparing, filing, and holding meetings for voting on the plan of arrangement, (v) approves the disclaimer of contracts and leases, (vi) may prepare reports in conjunction with any interlocutory motions by the company or other stakeholders, and (vii) prepares a report on the plan of arrangement, which is usually

77027988;1

included in the mailing of the plan, if one is filed. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 23. The monitor acts as the "eyes and ears of the court." Consent of the monitor is generally not required for the debtor to manage its business, including the sale of assets in the ordinary course, but the monitor may request that the court enjoin any actions that may prove harmful to the debtor and/or its creditors. Though the monitor need not formally approve significant transactions such as asset sales outside of the ordinary course,[3] court approval is generally required for such transactions and the court gives weight to the monitor's recommendations concerning such transactions. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 36(1) and (3).

17.   At the outset of a CCAA proceeding, a foreign representative may also be selected by the company to apply to a court outside of Canada for recognition of the Canadian proceedings on behalf of the debtor.

18.   Upon the commencement of a CCAA proceeding, all actions against the debtor and its assets are stayed, wherever located (similar to the Bankruptcy Code's automatic stay). *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.02. This stay goes into effect upon the entry of an initial order and is first granted for a maximum period of 10 days. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.02(1). The relief granted by the court within such 10-day timeframe is required to be limited to relief that is reasonably necessary for the continued operations of the debtor company in the ordinary course of business. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.001. In the Initial CCAA Order, the Canadian Court granted a stay of proceedings, rights, and remedies until July 8, 2024, providing that during this period no action, suit or proceeding in any court or tribunal against or in

---

[3] Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 23(1)(i).

6

respect of the Debtors or the Monitor may be commenced or continued except with the written consent of the Debtors and the Monitor and ordered all pending proceedings stayed and suspended pending further order. *See* Initial CCAA Order, at ¶¶ 15-17. The initial stay period is typically extended beyond the 10-day period by an amended and restated initial order if the debtor can show it continues to act with good faith and due diligence and the court deems it appropriate. There is no limit on the number or duration of extensions of the stay. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.02(2).

19.     Similar to the chapter 11 process, under the CCAA a company will usually continue to operate during the CCAA proceedings, and it may also avail itself of restructuring measures (such as the rejection of executory contracts) to enhance the prospects of bringing forward a successful plan of arrangement or other restructuring transaction. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 32(1)-(3).

20.     In a CCAA proceeding, subject to limited exceptions, clauses triggering termination rights upon the debtor's commencement of an insolvency proceeding are not enforceable, so contract counterparties may not terminate contracts solely by virtue of the commencement of the CCAA proceeding. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 34(1).

21.     A debtor is also able to obtain postpetition financing, subject to a hearing and court approval, after showing that the proposed financing is in the best interests of the debtor. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.2. If unsecured financing is unavailable, a debtor is permitted to borrow on a secured basis. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11(2). The court may approve priority liens against the company's assets in respect of such financing, which may rank above existing secured creditors, if

notice of the lien approval hearing is given to the affected creditors and the court determines that such liens are appropriate. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.2(1).

22. A plan of arrangement is one of the possible outcomes of a process under the CCAA. For a plan of arrangement to be binding on a class of creditors, a majority of the creditors in that class, by number, together with two-thirds (2/3) of the creditors in that class, by dollar value, must approve of the plan. If a class of creditors approves the plan, it is binding on all creditors within that class, subject to the court's approval of the plan. If a plan is approved by the court, the debtor must abide by the plan until it has satisfied its requirements.

23. Other outcomes are also possible, including asset and equity sales or other restructuring transactions, which are implemented after court approval if there is no plan of arrangement.

24. The assets of a business may also be sold outside of a CCAA plan, and outside of the ordinary course of business, without the formal approval of creditors if the company obtains authorization from the court. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 36(1). One way to conduct an asset sale is through a sales and investment solicitation process ("SISP") authorized by an order of the court (a "SISP Order"). *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s. 36. The SISP is conducted on terms established in the SISP Order, and the monitor typically assists with the SISP process. A successful bidder in a SISP must be approved by the court to complete the sale process.

25. The CCAA requires the court to consider certain factors when granting authorization of the sale or disposition of assets without the approval of secured creditors, including:

  a.  whether the process leading to the proposed sale or disposition was reasonable in the circumstances;

  b.  whether the monitor approved the process leading to the proposed sale or disposition;

  c.  whether the monitor filed with the court a report stating that in their opinion the sale or disposition would be more beneficial to the creditors than a sale or disposition under a bankruptcy;

  d.  the extent to which the creditors were consulted;

  e.  the effects of the proposed sale or disposition on the creditors and other interested parties; and

  f.  whether the consideration to be received for the assets is reasonable and fair, taking into account their market value. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 36(3)(a)-(f) [g]

26.  When granting approval of a successful bidder under a SISP, the court may authorize the sale or disposal of assets free and clear off any security, lien or other restriction. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 36(6). If it does, it will also order that other assets of the company or the proceeds of the sale or disposition are subject to a security interest in favor of a creditor whose security interest is to be affected by the order. *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 36(6).

27.  Throughout a CCAA proceeding, the court retains broad discretion to "make any order that it considers appropriate in the circumstances." *See* Companies' Creditors Arrangement Act, RSC 1985, c C-36, s 11.

**Conclusion**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 1st day of July, 2024.

Vancouver, British Columbia

_____
Mary Buttery, KC
Osler Hoskin & Harcourt LLP
1055 Dunsmuir Street, Suite 3000
Vancouver, BC V7X-1K8
Canada