UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Western Division

| | | |
|---|---|---|
| In Re: | ) | Case Number: 24-80891 |
| GOOD NATURED PRODUCTS INC., | ) | |
| et al., [1] | ) | (Jointly Administered) |
| Debtors in a Foreign Proceeding. | ) | Chapter: 15 |
| | ) | Honorable Thomas M. Lynch |
| | ) | |
| Debtor(s) | ) | |

## ORDER RECOGNIZING AND ENFORCING CANADIAN COURT ORDERS

Upon the Motion for an Order Recognizing and Enforcing Canadian Court Orders (the "Motion") good natured Products Inc. ("GDNP PubCo" or "Foreign Representative") as the authorized foreign representative of the above-captioned foreign debtors (collectively, the "Debtors"), in the proceeding (the "Canadian Proceeding") pending in the Supreme Court of British Columbia (the "Canadian  Court"), initiated under the Companies' Creditors Arrangement Act (the "CCAA"), under sections 105, 1507, 1520, and 1521 of the Bankruptcy Code, for the entry of an order (the "Order") approving, recognizing, and enforcing within the territorial jurisdiction of the United States:  (a) the Amended and Restated Initial Order ("ARIO") (attached to this Order as Exhibit 1), (b) the SISP and the SISP Order (attached to this Order as Exhibit 2), and (c) the DIP Order (attached to this Order as Exhibit 3) (collectively, with the ARIO and SISP Order  (the "Canadian Orders").

This Court has considered the Motion and the arguments contained therein; and the Court having concluded that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and sections 109 and 1501 of the Bankruptcy Code, and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue of this proceeding being proper pursuant to 28 U.S.C. §§ 1410; and good, sufficient, appropriate, and timely notice of the filing of, and the hearing on, the Motion was given, which notice is adequate for all purposes, and no further notice need be given; and this Court having held a hearing, if applicable, to consider the relief requested in the Motion; and there being no objections or other responses filed that have not been overruled, withdrawn, or otherwise resolved; and after due deliberation and sufficient cause appearing therefore:

IT IS HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

3.    The Canadian Orders, including administrative amendments thereto and all deadlines contemplated therein, are hereby recognized and given full force and effect in the United States.

4.    The Foreign Representative is authorized to take all actions it deems necessary to effectuate the relief granted in this Order.

5.    To the extent necessary, the SISP contemplated in the SISP complies with section 363 of the Bankruptcy Code regarding the sale of property located within the territorial jurisdiction of the United

States.

6.    Notwithstanding any provisions in the Bankruptcy Rules to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable.

7.    The foreign representative shall serve  a copy of said Order within five business days of it entry upon the Notice Parties as provided by the Court's Order specifying the Form and  Manner of Service and Notice (dkt. 19).

[1] The Debtors in these chapter 15 proceedings, together with the last four digits of their business identification numbers are:  good natured Products Inc. (9782); good natured Real Estate Holdings (Ontario) Inc. (9738); 1306187 B.C. Ltd. (9102); good natured Products (CAD) Inc. (3430); good natured Products Packaging Canada GP Inc. (0013); good natured Products Packaging Brampton GP Inc. (1615); good natured Products Industrial Canada GP Inc. (9542); good natured Products Packaging Canada LP (5943); good natured Products Packaging Brampton LP (5141); good natured Products Industrial Canada LP (5344); good natured Products (Illinois), LLC (1986); good natured Products Real Estate U.S., LLC (5490); good natured Products (US) Inc. (7740); good natured Products Packaging US LLC (5490); good natured Products Direct LLC (0622); good natured Products (Texas) LLC (2342).

Enter:    _Thomas M. Lynch_

Dated: July 31, 2024

Thomas M. Lynch
United States Bankruptcy Judge

**Prepared by:**

Thomas B Fullerton
Akerman LLP
71 South Wacker Dr., 47th Floor
Chicago, IL 60606
Tel: (312) 634-5726
thomas.fullerton@akerman.com
 -and-
R. Adam Swick (amitted pro hac vice)
Mark Lichtenstein (pro hac vice to be filed)
Akerman LLP
1251 Avenue of the Americas, 37th Floor
NY, NY 10020
Tel: (212) 880-3800
adam.swick@akerman.com
mark.lichtenstein@akerman.com
 -and-
Andrea S. Hartley (pro hac vice to be filed)
98 Southeast Seventh Street, Suite 1100
Miami, FL 33131
Tel: (305) 374-5600
Fax: (305) 349-4794
andrea.hartley@akerman.com

Counsel for the Foreign Representative



SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

JUL 08 2024

ENTERED

No. S-244212
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c.57, AS AMENDED

AND

IN THE MATTER OF GOOD NATURED PRODUCTS INC., & THOSE ENTITIES LISTED
IN SCHEDULE "A"

PETITIONERS

## O R D E R MADE AFTER APPLICATION

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| MADAM JUSTICE FITZPATRICK | ) | 2024/07/08 |
| | ) | |

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 8th day of July, 2024 (the "**Order Date**"); AND ON HEARING Mary Buttery, K.C., counsel for the Petitioners and those other counsel listed on Schedule "B" hereto; AND UPON READING the material filed, including the First Affidavit of Paul Antoniadis sworn June 27, 2024 (the "**First Antoniadis Affidavit**"), and the first report of Alvarez & Marsal Canada Inc. ("**A&M**") in its capacity as monitor of the Petitioners (in such capacity, the "**Monitor**"); AND UPON BEING ADVISED that the secured creditors who are likely to be affected by the charges created herein were given notice; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules, BC Reg 168/2009 and the inherent jurisdiction of this Honourable Court;

**EXHIBIT 1**

THIS COURT ORDERS AND DECLARES THAT:

1.      This amended and restated initial order amends and restates the order of this Court made in these proceedings on June 28, 2024.

## SERVICE

2.      The time for service of this notice of application and supporting materials is hereby abridged such that the notice of application is properly returnable today.

## JURISDICTION

3.      The Petitioners are companies to which the CCAA applies.

## PLAN OF ARRANGEMENT

4.      The Petitioners shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**").

## POSSESSION OF PROPERTY AND OPERATIONS

5.      Subject to this Order and any further Order of this Court, the Petitioners shall remain in possession and control of their current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"), and continue to carry on their business (the "**Business**") in the ordinary course and in a manner consistent with the preservation of the Business and the Property. The Petitioners shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, accountants, counsel and such other persons (collectively, "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for carrying out the terms of this Order.

**Cash Management System**

6.      The Petitioners shall be entitled to continue to utilize the central cash management system currently in place as described in the First Antoniadis Affidavit or replace it with another substantially similar central cash management system (the **"Cash Management System"**) and that any present or future bank providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Petitioners of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Petitioners, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

7.      The Petitioners shall be entitled, but not required, to pay the following expenses which may have been incurred prior to the Order Date:

(a)      all outstanding wages, salaries, employee and pension benefits (including long and short-term disability payments), vacation pay and expenses (but excluding severance pay) payable before or after the Order Date, in each case incurred in the ordinary course of business and consistent with the relevant compensation policies and arrangements existing at the time incurred (collectively "**Wages**"); and

(b)      the fees and disbursements of any Assistants retained or employed by the Petitioners which are related to the Petitioners' restructuring, at their standard rates and charges, including payment of the fees and disbursements of legal counsel retained by the Petitioners, whenever and wherever incurred, in respect of:

(i)      these proceedings or any other similar proceedings in other jurisdictions in which the Petitioners or any subsidiaries or affiliated companies of the Petitioners are domiciled;

    (ii)     any litigation in which the Petitioners are named as a party or are otherwise involved, whether commenced before or after the Order Date; and

    (iii)    any related corporate matters.

8.     Except as otherwise provided herein, the Petitioners shall be entitled to pay all expenses reasonably incurred by the Petitioners in carrying on the Business in the ordinary course following the Order Date, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

    (a)     all expenses and capital expenditures reasonably incurred and which are necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors' and officers' insurance), maintenance and security services, provided that any capital expenditure exceeding $50,000 shall be approved by the Monitor;

    (b)     all obligations incurred by the Petitioners after the Order Date, including without limitation, with respect to goods and services actually supplied to the Petitioners following the Order Date (including those under purchase orders outstanding at the Order Date but excluding any interest on the Petitioners' obligations incurred prior to the Order Date); and

    (c)     fees and disbursements of the kind referred to in paragraph 7(b) which may be incurred after the Order Date.

9.     The Petitioners are authorized to remit, in accordance with legal requirements, or pay:

    (a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from Wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes or any such claims which are to be paid pursuant to Section 6(3) of the CCAA;

(b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Petitioners in connection with the sale of goods and services by the Petitioners, but only where such Sales Taxes accrue or are collected after the Order Date, or where such Sales Taxes accrued or were collected prior to the Order Date but not required to be remitted until on or after the Order Date; and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal property taxes, municipal business taxes or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors.

10.     Until such time as a real property lease is disclaimed in accordance with the CCAA, the Petitioners shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable as rent to the landlord under the lease) based on the terms of existing lease arrangements or as otherwise may be negotiated between the Petitioners and the landlord from time to time ("**Rent**"), for the period commencing from and including the Order Date, twice-monthly in equal payments on the first and fifteenth day of the month in advance (but not in arrears).  On the date of the first of such payments, any Rent relating to the period commencing from and including Order Date shall also be paid.

11.     Except as specifically permitted herein, the Petitioners are hereby directed, until further Order of this Court:

(a)     to make no payments of principal, interest thereon or otherwise on account of amounts owing by the Petitioners to any of their creditors as of the Order Date except as authorized by this Order;

(b)     to make no payments in respect of any financing leases which create security interests;

(c)     to grant no security interests, trust, mortgages, liens, charges or encumbrances upon or in respect of any of their Property, nor become a guarantor or surety, nor otherwise become liable in any manner with respect to any other person or entity except as authorized by this Order;

(d)     to not grant credit except in the ordinary course of the Business only to their customers for goods and services actually supplied to those customers, provided such customers agree that there is no right of set-off in respect of amounts owing for such goods and services against any debt owing by the Petitioners to such customers as of the Order Date; and

(e)     to not incur liabilities except in the ordinary course of Business.

## RESTRUCTURING

12.     Subject to such requirements as are imposed by the CCAA, the Petitioners shall have the right to:

(a)     permanently or temporarily cease, downsize or shut down all or any part of their Business or operations and commence marketing efforts in respect of any of their redundant or non-material assets and to dispose of redundant or non-material assets not exceeding $100,000 in any one transaction or $500,000 in the aggregate;

(b)     terminate the employment of such of their employees or temporarily lay off such of their employees as they deem appropriate; and

(c)     pursue all avenues of refinancing for their Business or Property, in whole or part;

all of the foregoing to permit the Petitioners to proceed with an orderly restructuring of the Business (the "**Restructuring**").

13.     The Petitioners shall provide each of the relevant landlords with notice of the Petitioners' intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal.  The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the Petitioners'

entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors who claim a security interest in the fixtures, such landlord and the Petitioners, or by further Order of this Court upon application by the Petitioners, the landlord or the applicable secured creditors on at least two (2) clear days' notice to the other parties. If the Petitioners disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, they shall not be required to pay Rent under such lease pending resolution of any dispute concerning such fixtures (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Petitioners' claim to the fixtures in dispute.

14.    If a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then: (a) during the period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours on giving the Petitioners and the Monitor 24 hours' prior written notice; and (b) at the effective time of the disclaimer, the landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims the landlord may have against the Petitioners, or any other rights the landlord might have, in respect of such lease or leased premises and the landlord shall be entitled to notify the Petitioners of the basis on which it is taking possession and gain possession of and re-lease such leased premises to any third party or parties on such terms as the landlord considers advisable, provided that nothing herein shall relieve the landlord of its obligation to mitigate any damages claimed in connection therewith.

15.    Pursuant to Section 7(3)(c) of the *Personal Information Protection and Electronics Documents Act*, S.C. 2000, c. 5 and Section 18(1)(o) of the *Personal Information Protection Act*, S.B.C. 2003, c. 63, and any regulations promulgated under authority of either Act, as applicable (the "**Relevant Enactment**"), the Petitioners, in the course of these proceedings, are permitted to, and hereby shall, disclose personal information of identifiable individuals in their possession or control to stakeholders, their advisors, prospective investors, financiers, buyers or strategic partners (collectively, "**Third Parties**"), but only to the extent desirable or required to negotiate and complete the Restructuring or to prepare and implement the Plan or transactions for that purpose; provided that the Third Parties to whom such personal information is disclosed enter into

confidentiality agreements with the Petitioners binding them in the same manner and to the same extent with respect to the collection, use and disclosure of that information as if they were an organization as defined under the Relevant Enactment, and limiting the use of such information to the extent desirable or required to negotiate or complete the Restructuring or to prepare and implement the Plan or transactions for that purpose, and attorning to the jurisdiction of this Court for the purposes of that agreement.  Upon the completion of the use of personal information for the limited purposes set out herein, the Third Parties shall return the personal information to the Petitioners or destroy it.  If the Third Parties acquire personal information as part of the Restructuring or the preparation and implementation of the Plan or transactions in furtherance thereof, such Third Parties may, subject to this paragraph and any Relevant Enactment, continue to use the personal information in a manner which is in all respects identical to the prior use thereof by the Petitioners.

**STAY OF PROCEEDINGS, RIGHTS AND REMEDIES**

16.     Until and including July 22, 2024, or such later date as this Court may order (the "**Stay Period**"), no action, suit or proceeding in any court or tribunal (each, a "**Proceeding**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the Petitioners and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Petitioners or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

17.     During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Petitioners or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Petitioners and the Monitor or leave of this Court.

18.     Nothing in this Order, including paragraphs 16 and 17, shall: (i) empower the Petitioners to carry on any business which the Petitioners are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1

of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the Petitioners.

**NO INTERFERENCE WITH RIGHTS**

19.     During the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Petitioners, except with the written consent of the Petitioners and the Monitor or leave of this Court.

**CONTINUATION OF SERVICES**

20.     During the Stay Period, all Persons having oral or written agreements with the Petitioners or mandates under an enactment for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation, services, utility or other services to the Business or the Petitioners, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with, or terminating the supply of such goods or services as may be required by the Petitioners, and that the Petitioners shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the Order Date are paid by the Petitioners in accordance with normal payment practices of the Petitioners or such other practices as may be agreed upon by the supplier or service provider and the Petitioners and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

21.     Notwithstanding any provision in this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the Order Date, nor shall any Person be under any obligation to advance or re-advance any monies or otherwise extend any credit to the Petitioners on or after the Order Date. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

22.     During the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against the directors or officers of the Petitioners with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Petitioners whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Petitioners, if one is filed, is sanctioned by this Court or is refused by the creditors of the Petitioners or this Court. Nothing in this Order, including in this paragraph, shall prevent the commencement of a Proceeding to preserve any claim against a director or officer of the Petitioners that might otherwise be barred or extinguished by the effluxion of time, provided that no further step shall be taken in respect of such Proceeding except for service of the initiating documentation on the applicable director or officer.

**DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE**

23.     The Petitioners shall indemnify their directors and officers against obligations and liabilities that they may incur as directors or officers of the Petitioners after the commencement of the within proceedings, except to the extent that, with respect to any director or officer, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

24.     The directors and officers of the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the **"Directors' Charge"**) on the Property, which charge shall not exceed an aggregate amount of $400,000, as security for the indemnity provided in paragraph 23 of this Order. The Directors' Charge shall have the priority set out in paragraphs 35 and 37 herein.

25.     Notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) the Petitioners' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 23 of this Order.

## APPOINTMENT OF MONITOR

26.     A&M is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Petitioners with the powers and obligations set out in the CCAA or set forth herein, and that the Petitioners and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Petitioners pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

27.     The Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

    (a)     monitor the Petitioners' receipts and disbursements;

    (b)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)   advise the Petitioners in their development of the Plan and any amendments to the Plan;

(d)   assist the Petitioners, to the extent required by the Petitioners, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan;

(e)   have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Petitioners, to the extent that is necessary to adequately assess the Petitioners' business and financial affairs or to perform its duties arising under this Order;

(f)   be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(g)   perform such other duties as are required by this Order or by this Court from time to time.

28.   The Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, or by inadvertence in relation to the due exercise of powers or performance of duties under this Order, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof, and nothing in this Order shall be construed as resulting in the Monitor being an employer or a successor employer, within the meaning of any statute, regulation or rule of law or equity, for any purpose whatsoever.

29.   Nothing herein contained shall require or allow the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, **"Possession"**) of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination

including, without limitation, the *Canadian Environmental Protection Act*, the *Fisheries Act*, the British Columbia *Environmental Management Act*, the British Columbia *Fish Protection Act* and regulations thereunder and any other provincial or federal equivalent thereof (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. For greater certainty, the Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

30.     The Monitor shall provide any creditor of the Petitioners with information provided by the Petitioners in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Petitioners is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Petitioners may agree.

31.     In addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the rights and protections afforded the Monitor by the CCAA or any applicable legislation.

**ADMINISTRATION CHARGE**

32.     The Monitor, counsel to the Monitor, if any, and counsel to the Petitioners shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, by the Petitioners as part of the cost of these proceedings. The Petitioners are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor and counsel to the Petitioners on a periodic basis.

33.    The Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the British Columbia Supreme Court who may determine the manner in which such accounts are to be passed, including by hearing the matter on a summary basis or referring the matter to a Registrar of this Court.

34.    The Monitor, counsel to the Monitor, and counsel to the Petitioners shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of $250,000, as security for their respective fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order which are related to the Petitioners' restructuring. The Administration Charge shall have the priority set out in paragraphs 35 and 37 hereof.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

35.    The priorities of the Administration Charge and the Directors' Charge (collectively, the "**Charges**"), as among them, shall be as follows:

First – Administration Charge (to the maximum amount of $250,000); and

Second – Directors' Charge (to the maximum amount of $400,000).

36.    Any security documentation evidencing, or the filing, registration or perfection of, the Charges shall not be required, and that the Charges shall be effective as against the Property and shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered or perfected subsequent to the Charges coming into existence, notwithstanding any failure to file, register or perfect any such Charges.

37.    Each of the Charges shall constitute a mortgage, security interest, assignment by way of security and charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, mortgages, charges and encumbrances and claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**"), in favour of any Person, save and except those claims contemplated by section 11.8(8) of the CCAA.

38.    Except as otherwise expressly provided herein, or as may be approved by this Court, the Petitioners shall not grant or suffer to exist any Encumbrances over any Property that rank in priority to, or *pari passu* with the Charges, unless the Petitioners obtain the prior written consent of the Monitor and the beneficiaries of the Charges.

39.    The Charges shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the **"Chargees"**) shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to the BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other agreement (collectively, an **"Agreement"**) which binds the Petitioners; and notwithstanding any provision to the contrary in any Agreement:

(a)    the creation of the Charges shall not create or be deemed to constitute a breach by the Petitioners of any Agreement to which they are a party;

(b)    none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the creation of the Charges; and

(c)    the payments made by the Petitioners pursuant to this Order and the granting of the Charges do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

40.    Any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Petitioners' interest in such real property leases.

**SERVICE AND NOTICE**

41.     The Monitor shall (i) without delay, publish in the *Globe and Mail* (National Edition) a notice containing the information prescribed under the CCAA, (ii) within five days after Order Date, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, in the prescribed manner, a notice to every known creditor who has a claim against the Petitioners of more than $1000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder.

42.     The Petitioners and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Petitioners' creditors or other interested parties at their respective addresses as last shown on the records of the Petitioners and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

43.     Any Person that wishes to be served with any application and other materials in these proceedings must deliver to the Monitor by way of ordinary mail, courier, personal delivery or electronic transmission a request to be added to a service list (the "**Service List**") to be maintained by the Monitor. The Monitor shall post and maintain an up-to-date form of the Service List on its website at: https://www.alvarezandmarsal.com/goodnatured.

44.     Any party to these proceedings may serve any court materials in these proceedings by emailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, and the Monitor shall post a copy of all prescribed materials on its website at: https://www.alvarezandmarsal.com/goodnatured.

45.     Notwithstanding paragraphs 42 and 44 of this Order, service of the Petition, the Notice of Hearing of Petition, any affidavits filed in support of the Petition and this Order shall be made on the Federal and British Columbia, Alberta, Saskatchewan, Manitoba and Ontario Crowns in

accordance with the *Crown Liability and Proceedings Act*, R.S.C. 1985, c. C-50, and regulations thereto, in respect of the Federal Crown, the *Crown Proceeding Act*, R.S.B.C. 1996, c. 89, in respect of the British Columbia Crown, the *Proceedings Against the Crown Act*, R.S.A. 2000, c. P-25, in respect of the Alberta Crown, the *Proceedings Against the Crown Act, 2019*, S.S. 2019, c. P-27.01, in respect of the Saskatchewan Crown, the *Proceedings Against the Crown Act*, C.C.S.M. c. P140, in respect of the Manitoba Crown, and the *Crown Liability and Proceedings Act*, S.O. 2019 c.7, Sch 17, in respect of the Ontario Crown.

**GENERAL**

46.     The Petitioners or the Monitor may from time to time apply to this Court for directions in the discharge of their powers and duties hereunder.

47.     Nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Petitioners, the Business or the Property.

48.     This court requests the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

49.     good natured Products Inc. is hereby authorized and empowered to act as the foreign representative (the **"Foreign Representative"**) in respect of these proceedings for the purpose of having these proceedings recognized in a foreign jurisdiction and to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Foreign Representative is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having

these proceedings recognized in a jurisdiction outside Canada, including acting as a foreign representative of the Petitioners to apply to the United States Bankruptcy Court for relief pursuant to Chapter 15 of the *United States Bankruptcy Code*, 11 U.S.C., §§ 101 – 1532, as amended.

50.    Each of the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

51.    The Petitioners may (subject to the provisions of the CCAA and the BIA) at any time file a voluntary assignment in bankruptcy or a proposal pursuant to the commercial reorganization provisions of the BIA if and when the Petitioners determine that such a filing is appropriate.

52.    The Petitioners are hereby at liberty to apply for such further interim or interlocutory relief as they deem advisable within the time limited for Persons to file and serve Responses to the Petition.

53.    Leave is hereby granted to hear any application in these proceedings on two (2) clear days' notice after delivery to all parties on the Service List of such Notice of Application and all affidavits in support, subject to the Court in its discretion further abridging or extending the time for service.

54.    Any interested party (including the Petitioners and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days' notice to all parties on the Service List and to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

55.    Endorsement of this Order by counsel appearing on this application is hereby dispensed with.

56.    This Order and all of its provisions are effective as of 12:01 a.m. local Vancouver time on the Order Date.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

_____
Signature of
☐ Party   ☑ Lawyer for the Petitioners

_____
Mary Buttery, K.C.

*Christian Garton For:*

_____
Signature of
☐ Party   ☐ Lawyer for <name of party(ies)>

_____
Name

BY THE COURT

_____
REGISTRAR

## Schedule "A"

*Canadian Petitioners*

1.      good natured Products Inc.

2.      good natured Real Estate Holdings (Ontario) Inc.

3.      1306187 B.C. Ltd.

4.      good natured Products (CAD) Inc.

5.      good natured Products Packaging Canada GP Inc.

6.      good natured Products Packaging Brampton GP Inc.

7.      good natured Products Industrial Canada GP Inc.

8.      good natured Products Packaging Canada LP

9.      good natured Products Packaging Brampton LP

10.     good natured Products Industrial Canada LP

*US Petitioners*

11.     good natured Products (US) Inc.

12.     good natured Products (Illinois), LLC

13.     good natured Products Real Estate U.S., LLC

14.     good natured Products Packaging US LLC

15.     good natured Products Direct LLC

16.     good natured Products (Texas) LLC

# Schedule "B"

## Appearance List

| NAME | APPEARING FOR |
|---|---|
| **Osler, Hoskin & Harcourt LLP**<br>Suite 3000, Bentall Four<br>1055 Dunsmuir Street<br>Vancouver BC V7X 1K8<br><br>Mary Buttery, K.C.<br>Christian Garton<br>Emma Newbery | The Petitioners |
| **McCarthy Tétrault**<br>745 Thurlow Street<br>Suite 2400<br>Vancouver, BC V6E 0C5<br><br>Lance Williams | The Monitor, Alvarez & Marsal Canada Inc. |
| **Norton Rose Fulbright Canada LLP**<br>510 West Georgia Street, Suite 1800<br>Vancouver, BC V6B 0M3<br><br>~~Jennifer Stam (remotely)~~<br>Keiran Siddall<br>Candace Formosa | Wells Fargo Capital Finance Corporation Canada |
| **Dentons Canada LLP**<br>250 Howe Street 20th Floor<br>Vancouver, BC V6C 3R8<br><br>John Sandrelli<br>Cassandra Federico | Royal Bank of Canada |

| | |
|---|---|
| **Owen Bird Law Corporation**<br>2900 – 733 Seymour St., P.O. Box 1,<br>Vancouver, BC V6B 0S6<br><br>Scott Stephens | Toronto-Dominion Bank |
| **Chaitons LLP**<br>5000 Yonge St, 10th Floor,<br>Toronto, ON  M2N 7E9<br><br>~~Harvey G. Chaiton~~ (remotely)<br>Laura Culleton | Export Development Canada |
| | |
| | |
| | |



SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

JUL 1 2 2024

ENTERED

No. S-244212
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c.57, AS AMENDED

AND

IN THE MATTER OF GOOD NATURED PRODUCTS INC., & THOSE ENTITIES LISTED
IN SCHEDULE "A"

PETITIONERS

## O R D E R MADE AFTER APPLICATION

| | | |
|---|---|---|
| BEFORE THE HONOURABLE | ) | |
| MADAM JUSTICE FITZPATRICK | ) | 2024/07/11 |
| | ) | |

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 11th day of July, 2024 (the "**Order Date**"); AND ON HEARING Mary Buttery, K.C., counsel for the Petitioners and those other counsel listed on Schedule "B" hereto; AND UPON READING the material filed, including the Second Affidavit of Paul Antoniadis sworn July 10, 2023, (the "**Second Antoniadis Affidavit**"); AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules, BC Reg 168/2009 and the inherent jurisdiction of this Honourable Court;

THIS COURT ORDERS AND DECLARES THAT:

### SERVICE AND DEFINITIONS

1.      The time for service of this notice of application and supporting materials is hereby abridged such that the notice of application is properly returnable today.

**EXHIBIT 2**

2.      Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to them in the Sale and Investment Solicitation Process in respect of the business and assets of the Petitioners, in the form attached hereto as Schedule "C" (the "**SISP**"), the Amended and Restated Initial Order of this Court dated July 8, 2024 (the "**ARIO**"), or the Second Antoniadis Affidavit, as applicable.

**SALE AND INVESTMENT SOLICITATION PROCESS**

3.      The SISP is hereby approved and the Petitioners and the Monitor are hereby authorized and directed to implement the SISP pursuant to the terms thereof. The Petitioners and the Monitor are hereby authorized and directed to perform their respective obligations and to do all things reasonably necessary to perform their obligations thereunder, subject to prior approval of the Court being obtained before completion of any transaction(s) under the SISP.

4.      Capital West Partners ("**Capital West**") is hereby appointed as sales agent of the Petitioners to implement and carry out duties under the SISP.

5.      The Petitioners, Capital West, and the Monitor and their respective affiliates, partners, directors, offices, employees, legal advisors, representatives, agents and controlling persons shall have no liability with respect to any and all losses, claims, damages or liabilities of any nature or kind to any person in connection with or as a result of the SISP, except to the extent of losses, claims, damages or liabilities that arise or result from the gross negligence or wilful misconduct of the Petitioners, Capital West, or the Monitor, as applicable, in performing their obligations under the SISP, as determined by this Court in a final order that is not subject to appeal or other review.

6.      In conducting the SISP, the Monitor shall have all of the benefits and protections granted to it under the CCAA, the ARIO and any other Order of this Court in the within proceeding.

**PIPEDA**

7.      Pursuant to section 18(10)(o) of the *Personal Information Protection Act* (British Columbia), and any similar legislation in any other applicable jurisdictions, the Petitioners or the Monitor and their respective advisors are hereby authorized and permitted to disclose and transfer to prospective SISP participants that are party to a non-disclosure agreement with the Petitioners (each, a "**SISP Participant**") and their respective advisors personal information of identifiable individuals, but only to the extent required to negotiate or attempt to complete a transaction pursuant to the SISP (a "**Transaction**"), Each SISP Participant to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to the SISP Participant's evaluation for the purpose of effecting a Transaction, and, if a SISP Participant does not complete a Transaction, shall return all such information to the Petitioners or the Monitor, or, in the alternative, destroy all such information and provide confirmation of its destruction if requested by the Petitioners or the Monitor.

**GENERAL**

8.      This court requests the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

9.      Each of the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

10.    Endorsement of this Order by counsel appearing on this application is hereby dispensed with.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

_____

Signature of
☐ Party   ☑ Lawyer for the Petitioners

Christian
Garton
For:

_____

Mary Buttery, K.C.

_____

Signature of
☐ Party   ☐ Lawyer for &lt;name of party(ies)&gt;

_____

Name

BY THE COURT

_____

REGISTRAR



CHECKED

## Schedule "A"

***Canadian Petitioners***

1.   good natured Products Inc.

2.   good natured Real Estate Holdings (Ontario) Inc.

3.   1306187 B.C. Ltd.

4.   good natured Products (CAD) Inc.

5.   good natured Products Packaging Canada GP Inc.

6.   good natured Products Packaging Brampton GP Inc.

7.   good natured Products Industrial Canada GP Inc.

8.   good natured Products Packaging Canada LP

9.   good natured Products Packaging Brampton LP

10.   good natured Products Industrial Canada LP

***US Petitioners***

11.   good natured Products (US) Inc.

12.   good natured Products (Illinois), LLC

13.   good natured Products Real Estate U.S., LLC

14.   good natured Products Packaging US LLC

15.   good natured Products Direct LLC

16.   good natured Products (Texas) LLC

## Schedule "B"

### Appearance List

| NAME | APPEARING FOR |
|---|---|
| **Osler, Hoskin & Harcourt LLP**<br>Suite 3000, Bentall Four<br>1055 Dunsmuir Street<br>Vancouver BC V7X 1K8<br><br>Mary Buttery, K.C.<br>Christian Garton<br>Emma Newbery | The Petitioners |
| **McCarthy Tétrault**<br>745 Thurlow Street<br>Suite 2400<br>Vancouver, BC V6E 0C5<br><br>Lance Williams<br>Ashley Bowron | The Monitor, Alvarez & Marsal Canada Inc. |
| **Norton Rose Fulbright Canada LLP**<br>510 West Georgia Street, Suite 1800<br>Vancouver, BC V6B 0M3<br><br>Kieran Siddall<br>Candace Formosa | Wells Fargo Capital Finance Corporation Canada |
| **Dentons Canada LLP**<br>250 Howe Street 20th Floor<br>Vancouver, BC  V6C 3R8<br><br>John Sandrelli<br>Cassandra Federico | Royal Bank of Canada |

| | |
|---|---|
| **Owen Bird Law Corporation**<br>2900 – 733 Seymour St., P.O. Box 1,<br>Vancouver, BC V6B 0S6<br><br>Scott Stephens | Toronto-Dominion Bank |
| **Chaitons LLP**<br>5000 Yonge St, 10th Floor,<br>Toronto, ON  M2N 7E9<br><br>Laura Culleton | Export Development Canada |
| | |
| | |
| | |

# Schedule "C"

**Sale and Investment Solicitation Process**

## SALES AND INVESTMENT SOLICITATION PROCESS
## GOOD NATURED PRODUCTS INC. AND AFFILIATES

1.  On June 28, 2024, Good Natured Products Inc. ("**Good Natured**") and its subsidiaries (collectively, the "**Petitioners**") sought and were granted an initial order (the "**Initial Order**") under the *Companies' Creditors Arrangement Act*, RSC 1985, c C-36, as amended (the "**CCAA**") from the Supreme Court of British Columbia (the "**CCAA Court**"). The Petitioners' proceedings under the CCAA are referred to herein as the "**CCAA Proceedings**".

2.  Pursuant to the Initial Order, Alvarez & Marsal Canada Inc. was appointed as monitor of the Petitioners in the CCAA Proceedings (in such capacity, the "**Monitor**").

3.  Pursuant to proceedings commenced in the United States Bankruptcy Court for the Northern District of Illinois (the "**US Bankruptcy Court**", and together with the CCAA Court, the "**Insolvency Courts**") under chapter 15, Title 11 of the United States Code (the "**Chapter 15 Proceedings**", and together with the CCAA Proceedings, the "**Insolvency Proceedings**"), Good Natured obtained, among other things, recognition of the CCAA Proceedings.

4.  Wells Fargo Capital Finance Corporation Canada (the "**Lender**") has agreed to provide certain interim financing to the Petitioners during the Insolvency Proceedings, as approved or to be approved by the Insolvency Courts.

5.  Pursuant to the Order of the CCAA Court dated July 11, 2024 (the "**SISP Order**"), the CCAA Court approved the sale and investment solicitation process set out herein (the "**SISP**"). Capitalized terms used herein are as defined in the SISP Order unless defined otherwise herein.

6.  Pursuant to the SISP Order, Capital West Partners was appointed to act as Sales Agent in accordance with the SISP Order and the SISP.

## SISP OVERVIEW

7.  The purpose of the SISP is to solicit interest in one or more or any combination of (1) a restructuring, recapitalization or other form of reorganization of the business and affairs of one or more of the Petitioners as a going concern, or (2) a sale of all, substantially all or one or more components of the Petitioners' assets (the "**Property**") and/or business operations of the Petitioners (the "**Business**") as a going concern or otherwise.

8.  The SISP describes the manner in which individuals, corporations, limited and unlimited liability companies, general and limited partnerships, associations, trusts, unincorporated organizations, joint ventures, governmental organizations or other entities (each, a "**Person**") may gain access to or continue to have access to due diligence materials concerning the Petitioners, the Property and the Business, how bids involving the Petitioners, the Property or the Business will be submitted to and dealt with by the Petitioners, the Monitor, the Sales Agent and the Lender and how Court approval will be obtained in respect of any Transaction (as defined below).

9.   As described below, the various deadlines herein may be extended by and at the discretion of the Monitor and the Petitioners, subject to approval by the Lender, in its sole discretion. The Monitor will consider extending the various deadlines herein in the event that the Monitor determines that such an extension will generally benefit the Petitioners' creditors and other stakeholders.

**"AS IS, WHERE IS" BASIS**

10.  Any transaction involving the Petitioners, the Property or the Business (in each case, a "**Transaction**") will be on an "as is, where is" basis and without surviving representations, warranties, covenants or indemnities of any kind, nature, or description by the Sales Agent, the Monitor, the Petitioners, or any of their respective agents, estates, advisors, professionals or otherwise, except to the extent expressly set forth in the relevant Final Agreement (as defined herein).

**THE SISP PROCESS**

**A.    Initial Solicitation of Interest**

11.  The Sales Agent may contact any Persons to solicit expressions of interest in a Transaction either before or after the granting of the SISP Order.

12.  As soon as reasonably practicable after the granting of the SISP Order, the Monitor will cause a notice regarding this SISP, in a form satisfactory to and previously approved by the Petitioners and the Monitor, to be published in (a) the Globe and Mail (National Edition), (b) the Wall Street Journal or other national daily publication acceptable to the Petitioners and the Monitor, and (c) any other publication in which the Sales Agent determines notice of this SISP should be published.

13.  As soon as reasonably practicable after the granting of the SISP Order, in consultation with the Petitioners and the Monitor, the Sales Agent will prepare a list of potential bidders (the "**Known Potential Bidders**") who may have an interest in a Transaction. Such list will include both strategic and/or financial parties who may be interested in acquiring an interest in the Petitioners and/or their assets pursuant to an asset purchase transaction (an "**Asset Bid**"), a restructuring of the debt, share or capital structure of the Petitioners (a "**Restructuring Bid**") or some combination of an Asset Bid and a Restructuring Bid (such combination bid, a "**Hybrid Bid**"). Concurrently, the Sales Agent will prepare an initial offering summary (the "**Teaser Letter**") notifying Known Potential Bidders of the SISP and inviting the Known Potential Bidders to express interest in making an Asset Bid, Restructuring Bid or Hybrid Bid (each, a "**SISP Bid**").

14.  By no later than July 18, 2024, the Sales Agent shall distribute to the Known Potential Bidders, the Teaser Letter, as well as a draft form of confidentiality agreement (the "**Confidentiality Agreement**") that shall inure to the benefit of the Person or Persons who make the Winning Bid (as defined herein) pursuant to this SISP. Copies of the Teaser Letter and Confidentiality Agreement shall be provided to any appropriate Persons who become known to the Sales Agent after the initial distribution of such documents.

- 3 -

15. Any Person who (a) executes a Confidentiality Agreement in form and substance satisfactory to the Petitioners, the Sales Agent and the Monitor, and (b) whom the Sales Agent is satisfied has the financial capabilities and technical expertise to make a viable SISP Bid, shall be deemed to be a potential bidder (each, a "**Potential Bidder**").

**B.    Due Diligence**

16. The Sales Agent will prepare a confidential information memorandum ("**CIM**") by no later than July 18, 2024, describing the opportunity to make a SISP Bid. The Sales Agent shall deliver the CIM to each Potential Bidder as soon as practicable after such Person is deemed to be a Potential Bidder in accordance with this SISP.

17. The Sales Agent shall provide each Potential Bidder with information, including access to an electronic data room established by the Sales Agent by no later than July 18, 2024 (the "**Data Room**"), that the Sales Agent determines to be necessary for the Potential Bidder to evaluate a transaction involving a SISP Bid.

**C.    LOI Process**

18. Any Potential Bidder who wishes to submit a SISP Bid must deliver a written, non-binding letter of intent (each, a "**LOI**") to the Monitor at the address specified in and in accordance with Schedule "A" hereto so as to be received by the Monitor not later than 5:00 p.m. PST on August 22, 2024, or such other date or time as the Monitor and the Petitioners may determine with the consent of the Lender, acting reasonably (the "**LOI Deadline**").

19. Following the LOI Deadline, all LOIs shall be reviewed by the Petitioners, in consultation with the Monitor, the Sales Agent the Lender, the Royal Bank of Canada ("**RBC**"), and Toronto-Dominion Bank ("**TD Bank**"). and Export Development Canada ("EDC"). [initials]

20. An LOI shall be a qualified LOI (each, a "**Qualified LOI**") provided that it contains:

   (a) a specific indication of the anticipated sources of capital for such Potential Bidder and preliminary evidence of the availability of such capital, or such other form of financial disclosure and credit support or enhancement that will allow the Monitor and its legal advisors to make, in their reasonable business or professional judgment, a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a SISP Bid;

   (b) a letter setting forth the identity of the Potential Bidder, the contact information for such Potential Bidder and full disclosure of the direct and indirect owners of the Potential Bidder and their principals;

   (c) an indication of whether the Potential Bidder wishes to tender (i) an Asset Bid; (ii) a Restructuring Bid; or (iii) a Hybrid Bid;

   (d) in the case of an Asset Bid, it identifies:

      (i) the purchase price range (including liabilities to be assumed by the Potential Bidder and any credit bid) including indicative value allocated to the Real Property;

- 4 -

(ii) whether the Asset Bid is *en bloc*, the Property included, any of the Property expected to be excluded, and/or any additional assets desired to be included in the transaction;

(iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the purchase price, preliminary evidence of the availability of such financing and the steps necessary and associated timing to obtain the financing and consummate the proposed transaction and any related contingencies, as applicable);

(iv) the proposed treatment of employees of the Petitioners;

(v) the proposed treatment of any leases and other material contracts;

(vi) any anticipated corporate, shareholder, internal or regulatory approvals required to close the transaction and the anticipated time frame and any anticipated impediments for obtaining such approvals;

(vii) any additional due diligence required or desired to be conducted by the Potential Bidder;

(viii) any conditions to closing that the Potential Bidder may wish to impose; and

(ix) any other terms or conditions of the Asset Bid which the Potential Bidder believes are material to the transaction;

(e) in the case of a Restructuring Bid, it identifies:

(i) the aggregate amount of the equity and debt investment, including liabilities to be assumed by the Potential Bidder and any credit bid component (including the sources of capital, preliminary evidence of the availability of such capital and the steps necessary and associated timing to obtain the capital and consummate the proposed transaction and any related contingencies, as applicable) to be made in the Petitioners;

(ii) the underlying assumptions regarding the *pro forma* capital structure (including the anticipated debt levels, debt service fees, interest and amortization);

(iii) the consideration to be allocated to the stakeholders including claims of any secured or unsecured creditors of the Petitioners and the proposed treatment of employees;

(iv) the structure and financing of the transaction including all requisite financial assurance;

(v) any anticipated corporate, shareholder, internal or regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals;

- 5 -

(vi) any additional due diligence required or desired to be conducted by the Potential Bidder, if any;

(vii) any conditions to closing that the Potential Bidder may wish to impose; and

(viii) any other terms or conditions of the Restructuring Bid which the Potential Bidder believes are material to the transaction;

(f) in the case of a Hybrid Bid, all of the information contained in subparagraphs (d) through (e) above, as applicable;

(g) such other information as may be requested by the Monitor or the Sales Agent; and

provided however, that any Qualified LOI must be in form and substance satisfactory to the Monitor.

21.    Any Potential Bidder who submits a Qualified LOI on or before the LOI Deadline shall be designated a "**Qualified Bidder**".

22.    The Petitioners, with the approval of the Monitor and in consultation with the Lender, may waive the strict compliance of one or more of the requirements specified above and deem any LOI to be a Qualified LOI, notwithstanding any noncompliance with the terms and conditions of this SISP.

23.    In the event that no Person submits an LOI, or that no LOI qualifies as or is deemed to qualify as a Qualified LOI, or that no LOI is deemed commercially reasonable to the Petitioners and the Monitor, the Petitioners may, with the approval of the Monitor and the Sales Agent and with the consent of the Lender, terminate the SISP. If no Qualified LOIs are received by the LOI Deadline, the Petitioners may, in consultation with the Monitor and the Lender, consider other forms of bids for the Property and the Business. At any time during the SISP, the Petitioners may, with the approval of the Monitor and the Lender, determine that any bid is a Winning Bid and seek Approval Orders (as defined below) in respect of such Winning Bid(s) from the Insolvency Courts.

**D.    Final Bid Process**

24.    By no later than August 26, 2024, the Sales Agent may invite Qualified Bidders to conduct additional due diligence or otherwise make available to Qualified Bidders additional information not posted in the Data Room, arrange for inspections and site visits at the Petitioners' premises, as determined by the Sales Agent.

25.    Any Qualified Bidder may submit an Asset Bid, a Restructuring Bid or a Hybrid Bid (each a "**Final Bid**") to the Monitor at the address specified in Schedule "A" hereto on or before 5:00 pm PST on September 12, 2024, or such later time and date that the Petitioners may determine, with the approval of the Monitor and the consent of the Lender, acting reasonably (the "**Final Bid Deadline**").

26.    Final Bids shall be reviewed by the Monitor, the Sales Agent, the Petitioners and the Lender, RBC, and TD Bank, and EDC.



- 6 -

27.   A Final Bid submitted as an Asset Bid shall be a **"Qualified Asset Bid"** in the event that:

    (a) it complies with the criteria required for a Qualified LOI;

    (b) provides an allocation of value for the Real Property;

    (c) it includes a letter stating that the Asset Bid is irrevocable until the earlier of (i) the approval by the Insolvency Courts, and (ii) forty-five (45) days following the Final Bid Deadline; provided, however, that if such Asset Bid is selected as the Winning Bid or the Backup Bid, it shall remain irrevocable until the closing of the Winning Bid or the Backup Bid, as the case may be;

    (d) it includes a duly authorized and executed purchase and sale agreement specifying all consideration payable, together with all exhibits and schedules thereto, and such ancillary agreements as may be required by the Qualified Bidder with all exhibits and schedules thereto;

    (e) it does not include any request or entitlement to any break fee, expense reimbursement or similar type of payment;

    (f) it includes written evidence of a firm, irrevocable commitment for all required funding and/or financing from a creditworthy bank or financial institution to consummate the proposed transaction, or other evidence satisfactory to the Monitor to allow the Monitor to make a reasonable determination as to the Qualified Bidder's (and its direct and indirect owners and their principals) financial and other capabilities to consummate the transaction contemplated by the Asset Bid;

    (g) it is not conditional on (i) the outcome of unperformed due diligence by the Qualified Bidder and/or (ii) obtaining any financing capital and includes an acknowledgement and representation that the bidder has had an opportunity to conduct any and all required due diligence prior to making its Asset Bid;

    (h) it is not conditional upon any governmental or regulatory approval;

    (i) it fully discloses the identify of each Person that is bidding or otherwise that will be sponsoring or participating in the Asset Bid, including the identification of the bidder's direct and indirect owners and their principals, and the complete terms of any such participation;

    (j) it is accompanied by a refundable cash deposit (the **"Deposit"**) in the form of a wire transfer (to a trust account specified by the Monitor), in an amount equal to ten percent (10%) of the consideration to be paid in respect of the Asset Bid, to be held and dealt with in accordance with this SISP;

    (k) it contains other information requested by the Sales Agent, the Petitioners or the Monitor; and

    (l) it is received by no later than the Final Bid Deadline.

28.     A Final Bid submitted as a Restructuring Bid shall be a **"Qualified Restructuring Bid"** in the event that:

(a) It includes definitive documentation, duly authorized and executed by the Qualified Bidder, setting out the terms and conditions of the proposed transaction, including the aggregate amount of the proposed equity and debt investment, assumption of debt if any, and details regarding the proposed equity and debt structure of the Petitioners following completion of the proposed transaction;

(b) it includes a letter stating that the Restructuring Bid is irrevocable until the earlier of (i) the approval by the Insolvency Courts, and (ii) forty-five (45) days following the Final Bid Deadline; provided however, that if such Restructuring Bid is selected as the Winning Bid or the Backup Bid, it shall remain irrevocable until the closing of the Winning Bid or the Backup Bid, as the case may be;

(c) it does not include any request or entitlement to any break fee, expense reimbursement or similar type of payment;

(d) it includes written evidence of a firm, irrevocable commitment for all required funding and/or financing from a creditworthy bank or financial institution to consummate the proposed transaction, or other evidence satisfactory to the Monitor to allow the Monitor to make a reasonable determination as to the Qualified Bidder's (and its direct and indirect owners and their principals) financial and other capabilities to consummate the transaction contemplated by the Restructuring Bid;

(e) it is not conditional on (i) the outcome of unperformed due diligence by the Qualified Bidder and/or (ii) obtaining any financing capital and includes an acknowledgment and representation that the bidder has had an opportunity to conduct any and all required due diligence prior to making its Restructuring Bid;

(f) it is not conditional on any governmental or regulatory approval;

(g) it fully discloses the identity of each entity that is bidding or otherwise that will be sponsoring or participating in the Restructuring Bid, including the identification of the Qualified Bidder's direct and indirect owners and their principals, and the complete terms of such participation;

(h) it is accompanied by a refundable deposit in the form of a wire transfer (payable to a trust account specified by the Monitor) in an amount equal to ten percent (10%) of the consideration to be paid pursuant to the Restructuring Bid, to be held and dealt with in accordance with this SISP; and

(i) it is received by no later than the Final Bid Deadline.

29.     A Hybrid Bid submitted by the Final Bid Deadline will be considered a **"Qualified Hybrid Bid"** if it is in substantial compliance with the portions of paragraphs 27 and 28 of this SISP, as determined by the Monitor.

30.    All Qualified Asset Bids, Qualified Restructuring Bids and Qualified Hybrid Bids shall constitute "**Qualified Final Bids**". The Petitioners, with the approval of the Monitor, may waive the strict compliance of one or more of the requirements specified above and deem any Final Bid(s) to be a Qualified Final Bid, notwithstanding any non-compliance with the terms and conditions of this SISP.

**E.    Selection of Winning Bid**

31.    The Petitioners shall review all Qualified Final Bids in consultation with the Monitor, the Sales Agent and the Lender. Subject to the approval of the Monitor and the Lender, the Petitioners may, but shall have no obligation to, enter into a definitive agreement or agreements (each, a "**Final Agreement**") with the Person or Persons who submitted the highest, best or otherwise most favourable Qualified Final Bid(s).

32.    In the event that the Petitioners enter into one or more Final Agreements on or before September 19, 2024, or such later time that the Monitor may determine (the "**Final Agreement Deadline**"), any Qualified Bid so selected shall be a "**Winning Bid**" and the next highest, best or otherwise most favourable Qualified Bid received, as determined by the Petitioners with the consent of the Monitor and the Lender, shall be the "**Backup Bid**". Any Qualified Bidder that makes a Winning Bid shall be a "**Successful Bidder**" and any Qualified Bidder that makes a Backup Bid shall be a "**Backup Bidder**".

33.    Notwithstanding anything to the contrary in this SISP, the Petitioners and the Monitor shall not, without the prior consent of RBC and TD Bank (collectively, the "**Real Estate Lenders**"), identify one or more Qualified Final Bid that includes the sale or acquisition of the Real Estate Lenders' Canadian real property collateral (the "**Real Estate Collateral**") as the Winning Bid, if such Qualified Final Bid would not, if so identified, result in full payment of the amounts owing to the Real Estate Lenders on closing with respect to the ~~Real Property Collateral~~. For greater certainty, this provision does not override paragraph 12 of the Amended and Restated Initial Order of Justice Fitzpatrick made on July 8, 2024. └─ **Real Estate Collateral**    _AX_

34.    The Monitor or the Sales Agent will notify each Successful Bidder and Backup Bidder of the Final Agreement and the Backup Bid shall remain open until the consummation of the transaction contemplated by the Winning Bid (and, for greater certainty, the Monitor shall be entitled to continue to hold the Deposit in respect of the Backup Bid until such time as the transaction contemplated by the Winning Bid is consummated).

35.    In the event that (a) no Qualified Bidder submits or is deemed to have submitted a Qualified Final Bid, (b) the Petitioners, with the approval of the Monitor and the Lender, determines that none of the Qualified Final Bids should be accepted, or (c) that a Final Agreement has not been entered into before the Final Agreement Deadline, this SISP shall terminate.

36.    The highest Qualified Final Bid may not necessarily be accepted by the Petitioners. The Petitioners, with the approval of the Monitor and the Lender, reserve the right to not accept any Qualified Final Bid or to otherwise terminate the SISP. The Petitioners, with the approval of the Monitor and the Lender, further reserve the right to deal with one or more Qualified Bidders to the exclusion of other Persons, to accept a Qualified Final Bid or

Qualified Final Bids for some or all of the Property, the Petitioners or the Business, to accept multiple Qualified Final Bids and enter into multiple Final Agreements.

**APPROVAL ORDERS**

37.   In the event that the Petitioners enter into a Final Agreement, the Petitioners shall apply for an order (the "**Approval Order**") from the Insolvency Courts on or before Thursday, September 26, 2024, in form and substance satisfactory to the Monitor, approving the transaction contemplated by the Winning Bid and any necessary related relief required to consummate the transaction contemplated by the Winning Bid, subject to the terms of the Final Agreement.

38.   The Petitioners may also concurrently obtain relief approving the transaction contemplated by the Backup Bid and any necessary related relief required to consummate the transaction contemplated by the Backup Bid.

39.   An Approval Order shall become a "**Final Order**" upon satisfaction of the following conditions: (i) it is in full force and effect; (ii) it has not been reversed, modified or vacated and is not subject to any stay; and (iii) all applicable appeal periods have expired and any appeals therefrom have been finally disposed of, leaving the Approval Order wholly operable.

**CLOSING**

40.   Closing of the transactions contemplated in any Final Agreement shall occur by the later of October 11, 2024, and ten (10) days of the date upon which the Approval Orders have become Final Orders] and in any event no later than October 25, 2024, or as may be extended with the Approval of the Monitor and the Lender.

**DEPOSITS**

41.   All Deposits paid pursuant to this SISP shall be held in trust by the Monitor. The Monitor shall hold Deposits paid by each of the Winning Bidder and the Backup Bidder in accordance with the terms outlined in this SISP. In the event that a Deposit is paid pursuant to this SISP and the Petitioners elect not to proceed to negotiate and settle the terms and conditions of a definitive agreement with the Person that paid such Deposit, the Monitor shall return the Deposit and any interest accrued thereon to that Person.

42.   In the event that either of the Successful Bidder or the Backup Bidder default in the payment of performance of any obligations owed to the Petitioners, the Monitor or the Sales Agent pursuant to any Final Agreement, the Deposit paid by the Winning Bidder or the Backup Bidder, as applicable, shall be forfeited to such party as liquidated damages and not as a penalty.

**INFORMATION AND CONFIDENTIALITY**

43.   None of directors and officers (collectively, "**Connected Persons**") are entitled to any SISP-related information or to be consulted in relation to the SISP until such time as any such party confirms in writing to the Monitor that they and their Connected Persons will

not be a bidder, or participate in any bid, in respect of the Debtors, Property or the Business (the "**Non-Bid Notice**") by July 18, 2024. For greater clarity, the Connected Persons shall not be entitled to be a bidder, or participate in any bid, in respect of the Debtors, Property or the Business after the submission of a Non-Bid Notice.

44.    The Sales Agent shall keep confidential all information concerning Potential Bidders, LOIs, Qualified Bidders, Final Bids, the Successful Bidder, the Winning Bid, the Backup Bidder, the Backup Bid, and the Final Agreement.

**GENERAL**

45.    Subject to the approval of the Monitor and the Lender, the Petitioners may at any time prior to the Final Bid Deadline apply to the Insolvency Courts for approval to accept a "stalking horse" bid in the SISP.

## SCHEDULE "A"

### Addresses for Deliveries

Any notice or other delivery made to the Monitor pursuant to this SISP shall be made to:

ALVAREZ & MARSAL CANADA INC.
Cathedral Place Building
925 West Georgia Street, Suite 902
Vancouver, BC  V6C 3L2

Attention: Anthony Tillman / Pinky Law
Email: atillman@alvarezandmarsal.com / pinky.law@alvarezandmarsal.com

> with copy to:

MCCARTHY TETRAULT LLP
745 Thurlow Street, Suite 2400
Vancouver, BC  V6E 0C5

Attention: Lance Williams / Ashley Bowron
Email: lwilliams@mccarthy.ca / abowron@mccarthy.ca

Any notice or delivery made to the Sales Agent pursuant to this SISP shall be made to:

- ●

Attention: ●
Email: ●

Deliveries pursuant to this SISP by email or by facsimile shall be deemed to be received when sent. In all other instances, deliveries made pursuant to this SISP shall be deemed to be received when delivered to the relevant address, as identified above.

SUPREME COURT
OF BRITISH COLUMBIA
VANCOUVER REGISTRY

JUL 1 2 2024

ENTERED

No. S-244212
Vancouver Registry

## IN THE SUPREME COURT OF BRITISH COLUMBIA

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36

AND

IN THE MATTER OF THE *BUSINESS CORPORATIONS ACT*,
S.B.C. 2002, c.57, AS AMENDED

AND

IN THE MATTER OF GOOD NATURED PRODUCTS INC., & THOSE ENTITIES LISTED
IN SCHEDULE "A"

PETITIONERS

## ORDER MADE AFTER APPLICATION

BEFORE THE HONOURABLE      )
MADAM JUSTICE FITZPATRICK    )     2024/07/11
                               )

THE APPLICATION of the Petitioners coming on for hearing at Vancouver, British Columbia, on the 11th day of July, 2024 (the "**Order Date**"); AND ON HEARING Mary Buttery, K.C., counsel for the Petitioners and those other counsel listed on Schedule "B" hereto; AND UPON READING the material filed, including the Second Affidavit of Paul Antoniadis sworn July 11, 2024; AND UPON BEING ADVISED that the secured creditors who are likely to be affected by the charges created herein were given notice; AND pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 as amended (the "**CCAA**"), the British Columbia Supreme Court Civil Rules, BC Reg 168/2009 and the inherent jurisdiction of this Honourable Court;

THIS COURT ORDERS AND DECLARES THAT:

1.     This order is made further to the amended and restated order of this Court made in these proceedings on July 8, 2024 (the "**ARIO**").

**EXHIBIT 3**

2.     Any capitalized terms used but not defined herein shall have the meanings given to them in the ARIO, unless otherwise indicated therein.

**SERVICE**

3.     The time for service of this notice of application and supporting materials is hereby abridged such that the notice of application is properly returnable today.

**STAY EXTENSION**

4.     The Stay Period as defined in paragraph 16 of the ARIO is hereby further extended until and including October 25, 2024.

**INTERIM FINANCING**

5.     The Petitioners are hereby authorized and empowered to borrow under a credit facility from Wells Fargo Capital Finance Corporation Canada (the "**DIP Lender**") in order to finance the continuation of the Business and preservation of the Property, provided that borrowings under such credit facility shall not exceed $15,100,000, unless permitted by further Order of this Court.

6.     Such credit facility shall be on the terms and subject to the conditions set forth in the credit agreement dated August 25, 2022 between the Petitioners, as borrower and guarantors, as applicable, and the DIP Lender, as lender, as amended to date including by the Ninth Amendment to Credit Agreement, dated July 11, 2024, between the Petitioners and the DIP Lender (collectively, the "**Credit Agreement**").

7.     The Petitioners are hereby authorized and empowered to execute and deliver the Ninth Amendment.

8.     The Petitioners are hereby authorized and empowered to execute and deliver such credit agreements, mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively, the "**Definitive Documents**"), as are contemplated by the Credit Agreement or as may be reasonably required by the DIP Lender pursuant to the terms

thereof, and the Petitioners are hereby authorized and directed to pay and perform all of its indebtedness, interest, fees, liabilities and obligations to the DIP Lender under and pursuant to the Credit Agreement and the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order and the ARIO.

9.     The Petitioners are authorized and directed to pay any and all amounts owing to the DIP Lender pursuant to the Credit Agreement on account of the Petitioners' pre-filing obligations due and owing thereunder to the DIP Lender, provided that no funds advanced by the DIP Lender under the Credit Agreement after the date of this Order shall be used to pay pre-filing obligations outstanding under the Credit Agreement.

10.    The DIP Lender shall be entitled to the benefit of and is hereby granted a charge (the "**DIP Lender's Charge**") on the Property (other than any owned real property owned by one or more of the Petitioners located in the United States). The DIP Lender's Charge shall not secure an obligation that exists before this Order is made. The DIP Lender's Charge shall have the priority set out in paragraphs 15 and 16 hereof.

11.    Notwithstanding any other provision of this Order or the ARIO:

(a)     the DIP Lender may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lender's Charge or any of the Definitive Documents;

(b)     upon the occurrence of an event of default under any of the Definitive Documents or the DIP Lender's Charge, the DIP Lender, upon 10 days notice to the Petitioners and the Monitor, may exercise any and all of its rights and remedies against the Petitioners or the Property under or pursuant to the Credit Agreement, Definitive Documents and the DIP Lender's Charge, including without limitation, to cease making advances to the Petitioners and set off and/or consolidate any amounts owing by the DIP Lender to the Petitioners against the obligations of the Petitioners to the DIP Lender under the Credit Agreement, the Definitive Documents or the DIP Lender's Charge, to make demand, accelerate payment and give other notices,

or to apply to this Court for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Petitioners and for the appointment of a trustee in bankruptcy of the Petitioners; and

(c)    the foregoing rights and remedies of the DIP Lender shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Petitioners or the Property.

12.    The DIP Lender, in such capacity, shall be treated as unaffected in any plan of arrangement or compromise filed by the Petitioners under the CCAA, or any proposal filed by the Petitioners under the *Bankruptcy and Insolvency Act* of Canada, with respect to any advances made under the Definitive Documents after the date of this Order.

## SALES AGENT

13.    Capital West Partners, in its capacity as **"Sales Agent"** shall be entitled to the benefit of and is hereby granted a charge (the **"Cap West Work Fee Charge "**) on the Property (other than any owned real property owned by one or more of the Petitioners located in the United States) in the amount of $75,000 for its work fees charged pursuant to the Capital West Partners' engagement letter dated July 11, 2024 (the **"Cap West Engagement Letter"**). The Cap West Work Fee Charge shall have the priority set out in paragraphs 15 and 16 hereof.

14.    The Sales Agent shall be entitled to the benefit of and is hereby granted a charge (the **"Cap West Success Fee Charge "**) on the any proceeds derived from the sale of the Petitioners' Property as a result of a sale resulting from the SISP, ranking in priority to all other ~~Claims,~~ claims in the amount of $1,250,000 for its success fees charged pursuant to the Cap West Engagement Letter.

*+ Charges* JK.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER AND THE ARIO**

15.     Paragraph 35 of the ARIO is amended and restated such that priorities of the Administration Charge, the DIP Lender's Charge, and the Directors' Charge (collectively, the "**Charges**"), as among them, shall be as follows:

> First – Administration Charge (to the maximum amount of $250,000); and the Cap West Work Fee Charge (to the maximum amount of $75,000)

> Second – DIP Lender's Charge (provided that the DIP Lender's Charge shall only secure the aggregate of the borrowings and obligations under the Credit Agreement, made on or after the date of this Order to the maximum amount of $15,100,000, plus interest, fees and expenses in accordance with the Definitive Documents); and

> Third – Directors' Charge (to the maximum amount of $400,000).

16.     Notwithstanding paragraph 37 of the ARIO, the DIP Lender's Charge shall be subordinate to the security of The Toronto-Dominion Bank ("**TD Bank**") and Royal Bank of Canada (formerly HSBC Bank Canada) ("**RBC**") in respect of the priorities granted in the Third Amended and Restated Intercreditor Agreement amongst the Petitioners, the DIP Lender, TD Bank, RBC (formerly HSBC Bank Canada), and Export Development Canada, dated February 22, 2024 and in the case of RBC such shall be subordinate to the HSBC Priority Collateral (as defined therein), the Purchase Money Security Interest of RBC in respect of the PTI Model G5000 Extrusion System and the term deposit in account 00990244624-0001at ~~HSBC.~~ RBC 〤

**GENERAL**

17.     Each of the Petitioners and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and the Monitor is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

18.    Endorsement of this Order by counsel appearing on this application is hereby dispensed with.

THIS COURT REQUESTS the aid and recognition of other Canadian and foreign Courts, tribunal, regulatory or administrative bodies, including any Court or administrative tribunal of any federal or State Court or administrative body in the United States of America, to act in aid of and to be complementary to this Court in carrying out the terms of this Order where required.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Petitioners and the Monitor and their respective agents in carrying out the terms of this Order.

BY THE COURT

REGISTRAR

CHECKED

ENDORSEMENTS ATTACHED

S-244212
Vancouver Registry

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT
TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY
CONSENT:

_____

Signature of
☐ Party   ☑ Lawyer for the Petitioners

Christian
Gorton
For:

_____

Mary Buttery, K.C.

_____

_____

BY THE COURT

_____

REGISTRAR

# Schedule "A"

***Canadian Petitioners***

1.     good natured Products Inc.

2.     good natured Real Estate Holdings (Ontario) Inc.

3.     1306187 B.C. Ltd.

4.     good natured Products (CAD) Inc.

5.     good natured Products Packaging Canada GP Inc.

6.     good natured Products Packaging Brampton GP Inc.

7.     good natured Products Industrial Canada GP Inc.

8.     good natured Products Packaging Canada LP

9.     good natured Products Packaging Brampton LP

10.    good natured Products Industrial Canada LP

***US Petitioners***

11.    good natured Products (US) Inc.

12.    good natured Products (Illinois), LLC

13.    good natured Products Real Estate U.S., LLC

14.    good natured Products Packaging US LLC

15.    good natured Products Direct LLC

16.    good natured Products (Texas) LLC

## Schedule "B"

### Appearance List

| NAME | APPEARING FOR |
|---|---|
| **Osler, Hoskin & Harcourt LLP**<br>Suite 3000, Bentall Four<br>1055 Dunsmuir Street<br>Vancouver BC V7X 1K8<br><br>Mary Buttery, K.C.<br>Christian Garton<br>Emma Newbery | The Petitioners |
| **McCarthy Tétrault**<br>745 Thurlow Street<br>Suite 2400<br>Vancouver, BC V6E 0C5<br><br>Lance Williams<br>Ashley Bowron | The Monitor, Alvarez & Marsal Canada Inc. |
| **Norton Rose Fulbright Canada LLP**<br>510 West Georgia Street, Suite 1800<br>Vancouver, BC V6B 0M3<br><br>Kieran Siddall<br>Candace Formosa | Wells Fargo Capital Finance Corporation Canada |
| **Dentons Canada LLP**<br>250 Howe Street 20th Floor<br>Vancouver, BC  V6C 3R8<br><br>John Sandrelli<br>Cassandra Federico | Royal Bank of Canada |

| | |
|---|---|
| **Owen Bird Law Corporation**<br>2900 – 733 Seymour St., P.O. Box 1,<br>Vancouver, BC V6B 0S6<br><br>Scott Stephens | Toronto-Dominion Bank |
| **Chaitons LLP**<br>5000 Yonge St, 10th Floor,<br>Toronto, ON  M2N 7E9<br><br>Laura Culleton | Export Development Canada |
| | |
| | |
| | |